**UNITED STATES of America**

v.

**Greg C. MARTIN, Defendant.**

**No. 88 Cr. 866 (CSH).**

United States District Court, S.D. New York.

May 4, 1990.

Stuart R. GraBois, Asst. U.S. Atty., Office of the U.S. Atty., New York City, for U.S.

Charles A. Ross, Legal Aid, Federal Defender's Services Unit, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This Opinion resolves the present dispute under the Sentencing Guidelines.

## BACKGROUND

Familiarity with the general history of this litigation is assumed, but a brief history of the dispute is useful here.

In an indictment filed on November 28, 1988, defendant Martin was charged with six counts of bank robbery and five counts of armed bank robbery, arising out of six separate robberies.[1] Martin entered a plea of guilty to three counts of armed bank

---

**1.** Specifically, counts one and two charge the defendant with bank robbery in violation of 18 U.S.C. § 2113(a) and armed bank robbery in violation of 18 U.S.C. § 2113(d) in respect of the robbery of a Bowery Savings Bank branch located at 700 St. Nicholas Avenue; New York, New York on October 27, 1988. Counts three and four charge the defendant with bank robbery and armed bank robbery respectively arising out of the October 21, 1988 robbery of a Chemical Bank branch at 784 Castle Hill Avenue in the Bronx. Counts five and six contain comparable allegations arising out of the October 6, 1988 robbery of an Anchor Savings Bank branch located at 117 East Fordham Road in the Bronx. Counts seven and eight charge the defendant with bank robbery and armed bank robbery in respect of the September 28, 1988 robbery of a Citibank Branch at 550 Hunts Point Avenue in the Bronx. Counts nine and ten contain comparable allegations arising out of the September 23, 1988 robbery of a Manufacturers Hanover Trust Company branch at 1536 Westchester Avenue in the Bronx. Count eleven charges the defendant with bank robbery arising out of the August 31, 1988 robbery of the Citibank branch located in the Bronx at 550 Hunts Point Avenue.

robbery (Counts two, four and six), on the understanding that the remaining counts would be dismissed at the time of sentencing.

The current dispute centers on two discrete but related issues arising under the Sentencing Guidelines. The pre-sentence report prepared by the Probation Department included a two point increase in the offense level pursuant to § 3C1.1 on account of obstruction of justice. Because the guidelines as they existed at the time the pre-sentence report was prepared provided that a defendant who received a two point enhancement for obstruction of justice should not receive a two point deduction for acceptance of responsibility,[2] a deduction which Martin might otherwise receive as a result of his guilty plea, the probation officer did not afford Martin such a deduction. Martin takes issue with both the two point enhancement for obstruction of justice and the lack of the two point deduction for acceptance of responsibility.

For the reasons stated in this Court's Opinion of September 26, 1989, 1989 WL115967, familiarity with which is assumed, I adopted the calculations of the Probation Department. By letter dated October 10, 1989, defendant moved for reconsideration of that Opinion, in consequence of which an evidentiary hearing was held on March 2, 1990.[3] The parties have submitted additional letter briefs and the matter is now ripe for decision.

## DISCUSSION

### I. *Obstruction of Justice*

The pre-sentence report sets forth three general reasons for the two point enhance-

ment.[4] While I remain of the view that specific incidents which do not amount to obstruction of justice when viewed individually can constitute obstruction when viewed in their entirety, I agree with defendant that the pattern of conduct at issue "must be materially mendacious and cannot be accorded the status of obstructive simply because a course of conduct is arguably identifiable." Letter of Charles A. Ross dated April 2, 1990 at 6 ("Ross Letter"). Thus, the question becomes the materiality of each allegedly obstructive incident, viewed in the context of the guidelines, and the overall nature of the course of defendant's conduct viewed against that same background.

### A. *Statements to Law Enforcement Officials*

■ After being arrested on October 27, 1988 for the robbery he committed on that date, Martin spoke with Special Agent Paul Harvey of the Federal Bureau of Investigation's joint bank robbery task force. Martin made certain false statements in that interview. The issue arises whether these untruths constitute obstruction of justice.

Harvey testified that after advising Martin of his constitutional rights, he had a conversation with Martin concerning Martin's involvement in robberies other than the one for which he had just been arrested.

Q. I direct your attention to October 27, 1988. Did you arrest Mr. Martin on that day?

A. Yes, I did.

Q. Did there come a time that you advised Mr. Martin of his constitutional rights?

---

**2.** At the time the pre-sentence report was prepared, Application Note 4 to § 3E1.1 of the Sentencing Guidelines provided that a two point adjustment for acceptance of responsibility "is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice (*see* § 3C1.1), regardless of other factors."

The November 1, 1989 amendments to the guidelines, permit the two point reduction despite a two point enhancement for obstruction of justice in "extraordinary circumstances." Section 3E1.1, Application Note 4.

**3.** The government called four witnesses: Pre-trial Services Officer Sharon Regis, Special Agents Paul Harvey and John Winslow of the Federal Bureau of Investigation, and Probation Officer Chris Palladino.

Defendant called no witnesses.

**4.** At the time of the sentencing hearing in this case, which was held on June 20, 1989, the government raised certain other grounds for the two point enhancement. I rejected those arguments for the reasons stated in my earlier Opinion and adhere to that decision.

A. I did.

Q. And subsequent to that did you have a conversation with him?

A. I did.

Q. At that time did Mr. Martin say anything about the bank robbery of October 27, 1988?

A. He did. He admitted robbing it and gave us details as to the robbery.

Q. At that time had you asked him whether there were any other bank robberies that he was involved in?

A. Yes.

Q. And what was his answer?

A. He said that was the only bank he had ever robbed.

  *  *  *  *  *  *

Q. Agent Harvey, was there a conversation about cooperation with Mr. Martin?

A. There was.

Q. Who initiated that conversation?

A. Mr. Martin did.

Q. To the best of your recollection, can you tell his Honor what Mr. Martin said about that?

A. He said that he was not a career criminal, that this was the only serious offense he had ever committed, and he wanted to cooperate with us fully.

Q. The only serious offense that he was referring to was the bank robbery at that time?

A. Yes.

Q. On October 27, 1988, is that correct?

A. That's correct.

Transcript of Evidentiary Hearing of March 2, 1990 at 4–5 ("Tr.").

Harvey further testified that on October 28, 1988 he had another conversation with Martin wherein Martin confessed to a second robbery upon being confronted with a surveillance photograph taken at the scene of that robbery.

Q. Now, on October 28, 1988 did you have a subsequent conversation with Mr. Martin?

A. I did.

Q. And what was that conversation about?

A. That conversation related to another bank robbery.

Q. And who initiated that conversation?

A. The conversation was initiated by Martin.

Q. And did he indicate what he wanted to do in that conversation?

A. Again, he told us he wanted to cooperate with us.

Q. At that time was there any discussion about any other bank robberies?

A. Yes.

Q. And what if anything did Mr. Martin say?

A. He admitted robbing a second bank, also in the Bronx, a Chemical Bank on Castle Hill Avenue on October 21.

Q. Was there anything that you said or did which preceded his admitting that bank robbery?

A. Yes. I showed him a surveillance photograph taken during the course of that robbery.

Q. So prior to your showing him the surveillance photo he indicated he only did one bank robbery?

A. Right, that's correct.

Tr. at 6–7. Agent Harris could not recall having a conversation with Martin about the October 21 Chemical Bank robbery prior to showing Martin the surveillance photograph. Tr. at 7. After being shown the surveillance photograph, Harris asked Martin if he had robbed any banks other than the two that he had then confessed to. Martin responded that he had not. *Id.*

Harvey next showed Martin another surveillance photograph of a then unidentified male, which had been taken at the robbery of an Anchor Savings Bank on October 18, 1988 and asked if Martin could identify the man in the photograph. Harvey testified as follows.

Q. Did you have any additional conversation[s] with Greg Martin about any other bank robberies?

A. I showed him another photograph.

Q. And what photograph was that?

A. That was a photograph taken during a robbery of an Anchor Bank at 117 East Fordham Road in the Bronx.

Q. Was that the bank robbery on October 18, 1988?

A. That's correct.

Q. And what was your purpose in showing him that photograph?

A. I wanted to find out whether he knew the person in that photograph.

Q. And did he say he did?

A. He said he did, yes. He said not by name, but he knew him to be a henchman, quote, henchman of a man who he said—a man named Victor who he said had forced him to rob that bank.

Q. Did you specifically ask him whether he knew the name of that individual in the photograph?

A. I did.

Q. And what was his response?

A. He said he didn't know him by name.

Q. He did not know him by name?

A. He did not.

Tr. at 8–9. Law enforcement later came to learn that Martin did in fact know the man in the surveillance photograph who was identified as Luis Galarza, Martin's brother-in-law.[5] Tr. at 10. Special Agent Winslow testified that had Martin responded truthfully concerning Galarza's identity, law enforcement would have been able to arrest Galarza and in so doing would have prevented four additional bank robberies. Tr. at 51–52.

Also on October 27, 1988, Harvey took what is commonly known as a "pedigree," or a description of Martin's background. Tr. at 12. Martin gave false information in respect of his date and place of birth, social security number, and education. Tr. at 13–14.

On November 22, 1988, a meeting was held at the United States Attorney's Office with AUSA Stuart GraBois; Martin; Martin's attorney, Jack Lipson; and Agent Winslow. Martin's attorney requested the meeting. At the November meeting Martin expressed an interest in "cooperating" with the government. Agent Winslow testified as below.

Q. To the best of your recollection, do you recall the discussion in November that was had with Mr. Martin, Mr. Lipson, the Assistant U.S. Attorney and yourself at the U.S. Attorney's office relative to Mr. Martin's cooperation?

A. Yes.

Q. Can you tell that to his Honor?

A. Yes. Mr. Martin said he wanted to cooperate, get this behind him. He said that he was only involved in two bank robberies, the two that he confessed to to Special Agent Harvey, that he was forced to do those bank robberies by a drug dealer named Victor. Mr. Martin said that he owed a large sum of money to Victor and Victor was pressuring him to rob banks for him.

Q. Did you specifically ask him at that first meeting whether he committed any other bank robberies?

A. Yes.

Q. And did he answer you directly?

A. He said no.

Tr. at 41. After Martin stated that he had only been involved in the two bank robberies which he had already admitted to, he was shown a fingerprint analysis report and the results of a photo spread identification arising out of the investigation of the October 6, 1988 robbery of an Anchor Savings Bank branch in the Bronx. This physical evidence implicated Martin in the October 6 robbery. After being confronted with this physical evidence, Martin admitted to this third bank robbery. Tr. at 42. He further admitted preparing various bank robbery demand notes for other robberies, but stated that he was not involved in any more than the three bank robberies. *Id.*

The government argues that each of these issues viewed individually justifies the two point enhancement for obstruction of justice pursuant to § 3C1.1, and that these events viewed together, with or with-

---

**5.** Luis Galarza was arrested on December 5, 1988 at which time he confessed to robbing thirteen banks. Galarza admitted to robbing nine of the thirteen banks with his brother-in-law, defendant Martin. Tr. at 43. Various physical evidence corroborates Galarza's statements as to certain of the robberies. Tr. at 45–47.

out the various other untruths Martin told to pre-trial services and the probation department, further supports the two point enhancement.

The touchstone of the analysis is the sentencing guidelines themselves. Section 3C1.1 provides as follows:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

The guidelines commentary speaks in terms of "a defendant who engages in conduct calculated to mislead or deceive authorities," Commentary to § 3C1.1, and "[n]othing in the plain language of the guideline indicates any congressional intent to limit its application to conduct occurring after the initiation of proceedings." *United States v. Irabor*, 894 F.2d 554, 556 (2d Cir.1990). Thus, while an indictment was not filed in the captioned case until November 28, 1988, after all of the conversations with law enforcement which the government contends amount to obstruction of justice, these pre-indictment events may constitute obstruction under the guidelines.

■ In respect of the conversations on October 27 and 28, 1988 and November 22, 1988, the testimony as it developed at the evidentiary hearing reveals that Martin was not cooperating with authorities at this point in time.[6] Therefore, Martin's denial of any other robbery besides that with which he was confronted at the time of each meeting cannot be construed as anything beyond a denial of guilt. Such a denial is not grounds for application of the obstruction of justice provision. Application Note 2 to § 3C1.1 ("This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt is not a basis for

application of this provision."). Had Martin entered into an agreement to cooperate with authorities, then his lies to investigating officers with regard to his participation in various robberies would clearly amount to more than "simple 'denial of guilt'", *United States v. Martin*, slip op. at 7, and would thus constitute obstruction of justice.

I take a different view of Martin's lie concerning the identification of the individual pictured in a surveillance photograph taken at the robbery of an Anchor Savings Bank on October 18, 1988. When asked if he could identify the person in the photograph Martin said that he knew the man, but not by name. Tr. at 8–9. As it turned out, the man in the photograph was Martin's brother-in-law, with whom Martin was very well acquainted. While defendant is correct that "he had no affirmative obligation to provide the F.B.I. with the identity of the individual displayed in the photograph," once he decided to answer questions concerning the individual's identity, he had a responsibility to do so truthfully. The application notes reflect that responsibility. Application Note 1(a) to § 3C1.1 ("destroying or concealing material evidence, or attempting to do so" is grounds for applying the adjustment for obstruction of justice). Galarza's identity was material evidence in respect of the investigation of the robberies in which Martin had also participated and in denying knowledge of Galarza's identity Martin was clearly attempting to "conceal material evidence" from the authorities. The fact that Martin's efforts to lead law enforcement astray were unsuccessful[7] is irrelevant to the analysis. *Irabor, supra*, at 556 ("[w]hether [defendant's] obstructive conduct was ultimately successful is ... irrelevant to the applicability of the Guideline").

---

6. It may well be true that as of November 22, 1988, both the government and the defendant were exploring the possibility of a cooperation agreement, but none of the trappings of cooperation were in place at that time.

7. On direct examination Agent Winslow testified as below.

> Q. As a result of the initial conversations with Mr. Martin by other members of the bank robbery task force and by yourself did the direction of the investigation change in any way?
>
> A. Not significantly.
> Tr. at 51.

Defendant's attempt to mislead the authorities in respect of Galarza's identity was an attempt to obstruct justice and as such warrants a two point enhancement pursuant to § 3C1.1. Martin's willful failure to give truthful information to Agent Harvey concerning his "pedigree" information in respect of his social security number further supports that conclusion.[8]

### B. *Statements to Pre-trial Services*

■ The Second Circuit has recently held that false statements made in an interview with a pre-trial services officer can support the two point enhancement for obstruction of justice. *Irabor, supra*, at 555–56. In respect of Martin's interview with Pre-trial Services Officer Sharon Regis, the government contends that defendant gave false information concerning his present address and telephone number. The testimony as it developed at the hearing is unclear on this point, however, and I do not view these alleged untruths as grounds for application of the two point enhancement. While Martin gave Regis three separate addresses and corresponding telephone numbers as his present address, one of those addresses was a hotel which he stated he had been staying at for the past week while his house was being painted. This is at least conceivable, and Regis herself conceded that there would be no problem with a defendant having several current addresses as long as those addresses were verifiable. Tr. at 31. However, Regis terminated the interview without exploring the nature of Martin's association with the separate addresses and did not attempt to verify any of them. Tr. at 32. In these circumstances, I do not view the contents of the interview as obstruction of justice.

### C. *Statements to Probation*

■ In respect of Martin's falsehoods with regard to the preparation of a pre-sentence report, the issue is the materiality of the falsehoods. Application Note 1(e) to

§ 3C1.1 ("furnishing material falsehoods to a probation officer in the course of a presentence ... investigation" supports the application of the two points enhancement). Martin lied about his educational and employment history, but such things are not relevant to the determination of what sentence should be imposed. *See* § 5H1.2 and 5H1.5. It is therefore difficult to view these falsehoods as material and I do not.

For the reasons stated above, application of the two point enhancement for obstruction of justice pursuant to § 3C1.1 is appropriate.

### II. *Acceptance of Responsibility*

■ Guideline § 3E1.1(a) provides that "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Defendant contends that he is deserving of the two point deduction by virtue of his plea in the instant case. However, "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right." § 3E1.1(c). Moreover, by virtue of the two point enhancement for obstruction of justice, defendant at bar must establish extraordinary circumstances favoring a two point deduction for acceptance of responsibility. Application Note 4 to § 3E1.1. Defendant has established no such extraordinary circumstances.

I remain of the view that defendant's involvement in a narcotics offense while he was awaiting sentence on this charge in the MCC fails to demonstrate that sort of "voluntary termination or withdrawal from criminal conduct or associations," Application Note 1(a) to § 3E1.1, contemplated by the Sentencing Guidelines. For that reason alone I decline to award defendant the two point deduction. In addition, while defendant's repeated failure to admit to more than the particular robbery with which he

---

**8.** I do not view the untruths with regard to age, place of birth and education in the same light. That is so because this information, while important, does not serve that same identifying function as does a person's social security num-

ber. An individual's work history, tax records and so forth can all be found out with the correct social security number; without it, investigative personnel might well be unable to establish any history at all for the defendant.

was immediately confronted cannot be said to amount to obstruction of justice, it can similarly not be said to constitute acceptance of responsibility. *See* Application Note 1(c) to § 3E1.1 ("voluntary and truthful admission to authorities of involvement in the offense and related conduct" warrants two point deduction for acceptance of responsibility).

## CONCLUSION

For the reasons stated, I adopt the calculations contained in the pre-sentence report and will sentence defendant within the guidelines range set forth in that report.

Defendant will be sentenced on May 15, 1990 at 4:30 p.m. in Courtroom 307.

The foregoing is SO ORDERED.