**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Orlando FIALA and John DeLuna,
Defendants–Appellants.**

Nos. 90–1489, 90–1551.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1990.

Decided March 28, 1991.

David E. Risley, Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Michael B. Metnick, Metnick & Barewin, Springfield, Ill., for Fiala.

Jed Stone, Urban & Stone, Chicago, Ill., for DeLuna.

Before BAUER, Chief Judge, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Orlando Fiala was convicted in district court of conspiracy to distribute and possession of marijuana. His co-defendant John DeLuna was convicted of conspiracy to distribute marijuana and of being a felon in possession of a firearm. Both appeal the district court's denial of their motions to suppress evidence discovered by police in an automobile driven by Fiala and owned by DeLuna that was searched after a traffic stop. Fiala also appeals his sentence, contesting Sentencing Guidelines offense level enhancements levied by the district court for obstruction of justice and possession of a weapon during the commission of a drug offense. We affirm both the district court's denial of the suppression motion and the imposition of the drug offense weapons enhancement, but reverse the imposition of the obstruction of justice enhancement.

## I.

On the morning of December 29, 1987, Illinois State Trooper Michael Ores observed a yellow Ford driven by defendant Fiala on Interstate 55 in Central Illinois. The Ford piqued Ores' interest because it appeared to be heavily loaded, with its tail end riding low. Ores radioed Illinois State Trooper Greg Neumann who was nearby in another car, and the two began to follow Fiala's vehicle. Soon thereafter, the troopers observed the Ford drift roughly one-half its width over the "fog line" on the right side of the highway for 5–10 seconds before returning to its proper place in the driving lane.

The troopers stopped Fiala for violating § 11–709 of the Illinois Vehicle Code ("whenever any roadway has been divided into two or more clearly marked lanes for traffic ... [a] vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.") Ill. Rev.Stat., ch. 95½, § 11–709. Neumann approached the car, and asked the driver, Fiala, and his passenger Susan Lucio, for their drivers' licenses. Lucio gave her license to the trooper, but Fiala replied that he had lost his license at a previous stop for gas. A radio check indicated that Fiala's license was suspended but that Lucio's was valid. The query also revealed that the Ford belonged to Reynaldo Segura, though Fiala claimed that the car belonged to his brother Charles. Segura turned out to be an alias of defendant John DeLuna.

Neumann gave Fiala a warning for improper lane usage and a citation for driving without a valid license, the latter being a Class A misdemeanor in Illinois. Ill.Rev. Stat. ch. 95½, § 6–303. He also radioed a request for a criminal history check on Fiala and Lucio. The check came back positive—Neumann was informed that Fiala had previously been arrested for possession of marijuana. In response, the trooper asked Fiala if there was anything illegal in the car. Fiala replied that there was not. Neumann then asked Fiala and Lucio if they would consent to a search of the car. The two gave their oral consent, but refused to sign written consent forms.

Rather than immediately search the car, Trooper Neumann radioed his superior, Sergeant Gary McConkey, for further instructions. McConkey directed Neumann not to begin his search until a K–9 unit (an officer with a drug-sniffing dog) arrived to examine the car for the scent of narcotics. The troopers waited 1½ hours at the roadside with Fiala and Lucio before the dog and his handler arrived. When Kimmo the drug-sniffing dog finally made his appearance, it wasn't for naught—the canine alerted the troopers to the possible presence of drugs in the trunk and in a box in the backseat of the Ford. On the basis of the dog's sniff search, Neumann searched

the car and found two large bags of marijuana in the box and two handguns in a briefcase in the rear.

Fiala, Lucio, and DeLuna, the owner of the Ford, were indicted for conspiring to distribute marijuana and possession of marijuana. DeLuna was also charged with being a felon in possession of a firearm and carrying a firearm during a drug offense. In a subsequent suppression hearing, the defendants challenged the constitutionality of the troopers' search of the Ford. They argued that the troopers' stop of their car was pretextual, that the troopers failed to obtain valid consent for the search, that the 1½ hour wait for the K–9 unit at the roadside constituted an unreasonable seizure, and that the troopers lacked authority to search the closed briefcase in the Ford because Kimmo did not indicate that it might contain drugs.

The district court denied defendants' suppression motions. Fiala and DeLuna then entered conditional guilty pleas (conditioned on their right to appeal the denial of their suppression motion): Fiala pled guilty to the conspiracy and possession charges and DeLuna pled guilty to the conspiracy and firearm charges. The district court sentenced Fiala to concurrent terms of 96 months for the conspiracy and possession counts, and sentenced DeLuna to concurrent terms of 84 months for the conspiracy count and 60 months for the firearm count.

Fiala and DeLuna now appeal the district court's denial of their suppression motion. Fiala also appeals his sentence.

## II.

### A. Constitutionality of the Traffic Stop

■ Defendants' first argument is that the troopers' traffic stop of the Ford was a mere pretext to facilitate the search for narcotics.[1] See, e.g., United States v. Lef-

kowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932) ("An arrest may not be used as a pretext to search for evidence."); United States v. D'Antoni, 856 F.2d 975, 979 (7th Cir.1988) ("an arrest may not be used as a mere pretext to avoid the warrant requirement of the fourth amendment"). They contend that the troopers' motivation in stopping the Ford was not the minor traffic infraction committed by Fiala (weaving over the fog line for 5–10 seconds), but rather an "inarticulable"— and constitutionally insufficient—"hunch" that the occupants of the car were engaged in illegal activity.

In United States v. Trigg, 878 F.2d 1037 (7th Cir.1989), we explained that our fourth amendment inquiry in cases involving allegedly pretextual stops is a narrow one: "so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional." 878 F.2d at 1041. We eschewed in Trigg the subjective motive examination in which the defendants ask us to engage, because of the obvious and very significant difficulties that inhere in such attempts to peer into the minds of law enforcement officers. Id. at 1040; see also Maryland v. Macon, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985); Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 1722, 56 L.Ed.2d 168 (1978). Instead, we articulated a two-pronged objective inquiry into the lawfulness of an allegedly pretextual stop or arrest: we ask first, whether law enforcement authorities had reasonable suspicion to make the stop or probable cause to make the arrest, and second, whether the officers involved were authorized under state or municipal law to effect the stop or arrest in question. 878 F.2d at 1041.[2]

Applying the Trigg test in this case, we find that the troopers' stop of Fiala's car did not violate the fourth amendment. Un-

---

1. We note that only Fiala may properly challenge the constitutionality of the traffic stop. The district court found that DeLuna, as owner of the Ford, had standing to challenge the troopers' search of the vehicle, but did not confer standing on DeLuna to challenge the stop, a distinct fourth amendment intrusion.

2. We recently reexamined and reaffirmed our pretextual search analysis in a second appeal in the Trigg case. See United States v. Trigg, 925 F.2d 1064, 1065 (7th Cir.1991).

der § 11–709 of the Illinois Vehicle Code, the troopers did indeed have cause to stop the Ford for partially swerving off the roadway. The district court found the troopers' testimony regarding Fiala's erratic driving credible, and we defer to that finding. The second prong of the pretext inquiry is easily met as well: under § 16–102 of the Vehicle Code, state troopers are authorized to enforce the Illinois traffic laws as they did in this case. *See* Ill.Rev.Stat. ch. 95½, § 16–102. We conclude that the stop of Fiala's car was not pretextual and did not violate the fourth amendment.

### B. *Constitutionality of the Search*

Defendants tender a number of challenges to the troopers' search of the car. They contend that their consent to the search was deficient, that they were unreasonably seized during the 1½ hour roadside wait for the drug-sniffing dog, and that the troopers did not have probable cause to search the closed briefcase in the backseat of the car in the absence of a positive sniff from their trusty mastiff, Kimmo.

█ The facts here present a variety of grounds on which to affirm the district court's denial of defendants' suppression motion. The most straightforward involves the search incident to arrest doctrine. *See New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Under *Belton*, a police officer who has made a lawful custodial arrest of the occupant of an automobile may "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile [as well as] ... the contents of any containers found within the passenger compartment ... whether [the container] is open or closed...." *Id.* at 460–61, 101 S.Ct. at 2864.

*Belton*, of course, sanctions only those searches that are incident to full custodial arrests. Trooper Neumann, in this case, was in fact authorized under Illinois law to arrest Fiala for driving without a valid license. *See People v. Hampton*, 52 Ill. Dec. 330, 333, 422 N.E.2d 11, 14, 96 Ill. App.3d 728 (1981); *People v. Garcia*, 2

Ill.Dec. 213, 357 N.E.2d 190, 43 Ill.App.3d 757 (1976); Ill.Rev.Stat. ch. 38, § 107–2(1)(c). Illinois law required that Fiala post a $100 cash bond before being released on the driving without a license charge, but Fiala told Neumann that he was unable to post such a bond. Neumann testified that, as a result, even before the discovery of drugs and weapons in the car, he intended to take Fiala to McLean County Jail and incarcerate him in lieu of bond. Fiala, then, was under full custodial arrest at the roadside, and the troopers were permitted to search the Ford—both the passenger compartment and any closed containers found therein—pursuant to the search incident to arrest doctrine. *See United States v. Hope*, 906 F.2d 254, 258 (7th Cir.1990) (search incident to arrest for operating a vehicle without a valid license permissible under *Belton*); *United States v. Edwards*, 885 F.2d 377, 383 (7th Cir. 1989). The question of the validity of Fiala's consent to the search is thus irrelevant, as is the absence of distinct and independent cause to search the briefcase in the Ford's backseat.

█ It also follows that the 1½ hour roadside detention of Fiala while the troopers awaited the arrival of a drug-sniffing dog was not unreasonable either. Even if Fiala wasn't detained at the roadside pending the dog's arrival, he would have been detained anyway in McLean County Jail as a result of his arrest for driving without a valid license. Fiala's passenger Lucio may have a better claim in this regard, as she was not lawfully under arrest, but she is not party to this appeal. DeLuna, of course, was not a passenger in the Ford and so has no claim in this respect either.

### III.

Fiala also appeals his sentence. Specifically, he contends that the district court erred by enhancing his offense level by two points for possession of a weapon during the commission of a drug offense, and by another two points for obstruction of justice.

## A.

■ Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two point offense level enhancement "[i]f a dangerous weapon (including a firearm) was possessed during the commission of the offense." Fiala argues that the § 2D1.1(b)(1) enhancement "requires a mental state which is of an intentional, reckless, or criminally negligent nature" and that such scienter has not been proven here: he contends that the guns at issue were found in a briefcase belonging to defendant DeLuna (a point which the government concedes) and that the government failed to prove that he had any knowledge of the weapons' existence.

We agree that Fiala should not receive a § 2D1.1(b)(1) enhancement absent a showing that he had knowledge of the weapons in question. At the time Fiala committed his offense, § 1B1.3 of the Guidelines, which provides general guidance for the application of offense level adjustments, directed sentencing courts to consider awarding enhancements where the harm or risk of particular acts or omissions specified in the adjustment subsections "was caused intentionally, recklessly, or by criminal negligence." § 1B1.3(b). The Fifth Circuit and D.C. Circuit have both read this language to import a scienter requirement into § 2D1.1(b)(1). *See United States v. Suarez*, 911 F.2d 1016, 1019–21 (5th Cir. 1990); *United States v. Burke*, 888 F.2d 862 (D.C.1989). We agree with their well-reasoned opinions; we note, however, that November 1989 amendments to the guidelines have since eliminated the passage quoted above from § 1B1.3 and so our reading of a scienter requirement into § 2D1.1(b)(1) is limited to those cases governed by the pre-November 1989 guidelines.

In this case, the district court expressly found that Fiala possessed the requisite scienter. After examining evidence which demonstrated that DeLuna and Fiala worked closely with one another in the course of their drug conspiracy, as well as evidence that linked Fiala's sister and DeLuna's wife to the weapons in question, the district court found that Fiala himself must have had knowledge of the weapons belonging to DeLuna that he was carrying in the Ford. Upon review of the record, we cannot say that this finding was clearly erroneous.

## B.

■ We do, however, find the district court's second enhancement to be in error. The court gave Fiala a two point offense level enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines.[3] Section 3C1.1 states:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

The basis for the enhancement in this case was a statement made by Fiala to trooper Neumann upon being stopped on Interstate 55. Neumann asked Fiala if he had anything illegal in the car, and Fiala responded that he did not. The district court concluded that Fiala should receive a § 3C1.1 obstruction of justice enhancement for uttering his exculpatory statement. We disagree.

Both the government and Fiala have recognized that the validity of the obstruction of justice enhancement turns on our interpretation of Application Note 3 of § 3C1.1. Note 3 states that "[t]his provision is not intended to punish a defendant 'for the exercise of a constitutional right.'" It specifies that "[a] defendant's denial of guilt is not a basis for application of this provision." Application Note 2 is also relevant to our interpretation of § 3C1.1. It legislates what amounts to a rule of lenity for the purposes of interpreting § 3C1.1: "In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant."

---

**3.** The Sentencing Guidelines were amended in November 1990, eight months after Fiala was sentenced. Unless otherwise specified, our references are to the old version of § 3C1.1 under which Fiala received his enhancement.

290

The government argues that Note 3's protection of exculpatory statements from the reach of § 3C1.1 is not applicable here. Fiala's lie, the government contends, "was not a denial of guilt, since he was not accused of any crime" at the time that trooper Neumann posed his question. Under the government's reading, § 3C1.1 would distinguish between those denials of guilt uttered before the initiation of judicial proceedings, and those spoken after such proceedings have begun, and would privilege only the latter. The government has offered no reason for its distinction; the only explanation we can discern is that the government's theory conveniently allows Fiala to receive an additional two point offense level enhancement, whereas a more uniform reading of § 3C1.1 would not.

We find no basis for the government's distinction in the text of § 3C1.1 or in the accompanying Commentary. Fiala's statement to Neumann was no more than a denial of guilt, and as such, falls squarely within Note 3's exception to the obstruction of justice enhancement. The only significant limitation on the denial of guilt exception for which we have found judicial support is the proposition that the exception does not apply to exculpatory statements made under oath. *See, e.g., United States v. Acosta-Cazares,* 878 F.2d 945, 953 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *United States v. Sergio,* 734 F.Supp. 842, 846–47 (N.D. Ind.1990). Fiala, however, was not under oath while being questioned at the roadside, and so his enhancement is unaffected by such cases.

By contrast, we have found significant support for Fiala's argument that the enhancement was in error. Amendments to the Guidelines Commentary that became effective shortly after Fiala was sentenced clarify that statements such as Fiala's are not grounds for the imposition of an enhancement under § 3C1.1. Note 4 of the amendments to § 3C1.1 explains that "making false statements, not under oath, to law enforcement officers" does not warrant application of a § 3C1.1 enhancement, "unless Application Note 3(g) applies." Note 3(g) provides that enhancement is ap-

propriate if a defendant made a "materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation." Fiala's statement clearly does not meet the standards of Note 3(g): his denial of guilt was neither material nor could it possibly be said to have significantly obstructed the troopers' investigation. Under the recent amendments to the Guidelines, then, Fiala's statement would not warrant an obstruction of justice enhancement. Although the Commentary amendments technically do not apply to Fiala, we believe it proper to consider them in our interpretation of § 3C1.1: the relevant commentary notes were amended merely to clarify the text of § 3C1.1 (which was not itself amended), and we see no reason to ignore such help from the Sentencing Commission in our attempt to give meaning to the less substantive pre–1990 § 3C1.1 commentary. *See United States v. Aguilera–Zapata,* 901 F.2d 1209, 1213–14 (5th Cir.1990) (amendments "intended only to clarify" and "not intended to make any substantive changes" may be considered in the interpretation of a guideline provision even though the amendment was not effective at the time of the commission of the offense in question.)

We conclude that Fiala should not have been given an obstruction of justice enhancement. *Accord United States v. Martin,* 737 F.Supp. 819, 824 (S.D.N.Y.1990), *aff'd,* 923 F.2d 846 (2d Cir.1990) (denial of guilt in response to questioning by officers does not warrant enhancement under § 3C1.1).

IV.

For the foregoing reasons, we affirm the district court's denial of the defendants' suppression motion and remand for resentencing consistent with this opinion.