**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas BURKE, Defendant–Appellant.**

No. 96–3599.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 21, 1997.

Decided Aug. 25, 1997.

Published Sept. 25, 1997 *.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 10, 1997.

---

* This decision was originally released as an unpublished order in accordance with Fed. R.App.P. 34(a); C.R. 34(f). In response to a Motion to Publish filed by *pro se* appellant Thomas Burke on September 9, 1997, and granted by this Court on September 17, 1997, it is now issued as a published opinion in accordance with C.R. 53(d)(3).

402

Barry Rand Elden (submitted), Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Michael A. Johnson, Chicago, IL, for Defendant–Appellant.

Thomas Burke, Oxford, WI, pro se.

Before CUMMINGS, BAUER and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

Thomas Burke, a former lawyer, pleaded guilty to a single count of mail fraud, 18 U.S.C. § 1341, for using the United States mail to sell fraudulent second mortgage promissory notes. Under the federal sentencing guidelines, Burke's base offense level was 6. U.S.S.G. § 2F1.1(a). Because Burke's fraud caused over $200,000 in losses to his victims, the district court increased his offense level by 8 points, U.S.S.G. § 2F1.1(b)(1)(I), and because his offense involved more than minimal planning, the court increased his offense level by an additional 2 points. U.S.S.G. § 2F1.1(b)(2)(B).

Moreover, the district court found that Burke perpetrated his fraud in violation of a 1995 consent decree entered into with the Illinois Secretary of State, that prohibited him from "offering or selling any securities within the State of Illinois except within compliance with the provisions of the [Illinois Securities] Act." Accordingly, the court increased Burke's offense level by 2 more points. U.S.S.G. § 2F1.1(b)(3)(B). The district court also enhanced Burke's offense level by 2 points for obstruction of justice, U.S.S.G. § 3C1.1, because he encouraged a material witness to lie about the conduct of Burke's business. Finally, the court enhanced Burke's offense level by yet 2 more points for abuse of a position of trust or use of a special skill. U.S.S.G. § 3B1.3. The court denied Burke any decrease in his offense level for acceptance of responsibility, U.S.S.G. § 3E1.1, and thus, he had a total offense level of 22. With a criminal history category of I, Burke faced 41–51 months imprisonment. The court sentenced Burke to serve 46 months in prison and to pay approximately $252,000 in restitution.

Burke—who has elected to represent himself on appeal—now challenges five aspects of his sentence: the enhancement for obstruction of justice, the enhancement for violating the Illinois consent decree, the enhancement for abuse of a position of trust, the denial of the reduction for acceptance of responsibility, and the restitution order. We deal with each of these claims in order.

1. Libet did not testify at Burke's sentencing hear-

## I. Obstruction of Justice

■ Burke sold his fraudulent promissory notes through a business called the American Association of Retired Taxpayers/Financial Analysis Group. This company was a successor (at least in name) to a company called the American Association of Retired Taxpayers ("AART"). Burke previously had worked with Burton Libet at the AART. Several years before he was arrested in this case, Burke told Libet that if anyone contacted him regarding the AART, Libet should state that "Mike Keanally"—a fictitious person— had taken over the company. After Burke was arrested and released on bond in this case, Burke spoke with Libet and again encouraged him to adhere to the Keanally story. Based upon this conversation, the district court found that Burke had attempted to obstruct the investigation and prosecution of this case. Accordingly, the court increased Burke's offense level by 2 points. U.S.S.G. § 3C1.1.

On appeal, Burke does not deny that he spoke to Libet—a material witness in this case—or that he (Burke) agreed to shift the blame for the AART's actions to Keanally. Rather, Burke insists that he merely agreed to stick to the Keanally story for Libet's benefit, because Libet was being investigated by the Attorneys General of Illinois and Nevada. Burke argues that he merely agreed to lie on Libet's behalf in any future investigation or prosecution of Libet, and that he had no intent to obstruct the administration of justice in his own case. Accordingly, Burke contends, the district court incorrectly enhanced his sentence under § 3C1.1.

■ Burke is correct that, in order to receive an enhancement under § 3C1.1, a defendant must obstruct or attempt to obstruct justice in "the instant offense"—that is, the offense charged in the indictment for which the defendant was convicted. *United States v. Partee*, 31 F.3d 529, 531 (7th Cir. 1994). Nonetheless, Burke's argument fails for two reasons. First, Burke's argument on appeal is essentially a credibility argument. He contends that Libet's testimony[1]—that

ing. Libet did, however, testify at Burke's deten-

Burke called him and encouraged him to stick to the Keanally story for Burke's benefit—is not credible, and that the district court should have believed his (Burke's) testimony instead. A credibility determination is not a basis for appellate review, however. *See, e.g., United States v. House,* 110 F.3d 1281, 1286 (7th Cir.1997) ("[A]rguments which simply urge a reassessment of a district court's credibility determination 'are wasted on an appellate court.'") (quoting *United States v. Molinaro,* 877 F.2d 1341, 1347 (7th Cir.1989)), *petition for cert. filed* July 7, 1997. Thus, Burke's claim that his testimony is more credible than Libet's does not state a basis for reversing the district court's determination.[2]

Second, regardless of Burke's motivation for sticking to the Keanally story, shifting the blame for the AART's actions to a fictitious person invariably would have had the effect of obstructing the administration of justice in this case, and that obstruction invariably would have worked to Burke's benefit. As the district court stated:

> I conclude it would be impossible to stick to the Keanally story for Mr. Libet's sake without it also inuring for Mr. Burke's benefit.
>
> ...
>
> The Keanally story is the Keanally story. If it were to be believed, it would absolve in part, if not totally, Mr. Burke from the criminal responsibility he was facing....

Whether Burke obstructed justice for the purposes of § 3C1.1 is "a factual determination that enjoys a presumption of correctness under the clearly erroneous standard." *United States v. Hickok,* 77 F.3d 992, 1007 (7th Cir.1996), *cert. denied,* —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). On appeal, Burke does not deny that the investigation and prosecution of *this case* would have been impeded if both he and Libet had stuck to the Keanally story, nor does he deny that he would have benefitted from that obstruction. Rather, he simply insists that his primary motivation for agreeing to stick to the story was to help Libet. Nonetheless, Burke's "altruistic" motive for agreeing to stick to the Keanally story does not make it any less an obstruction of this case. Thus, we conclude that the district court properly enhanced Burke's sentence for obstruction of justice.

## II. Violation of the Illinois Consent Decree

■ Burke next argues that the district court incorrectly increased his offense level by 2 points under U.S.S.G. § 2F1.1(b)(3)(B) after finding that his sales of fraudulent promissory notes violated the consent decree he entered into with the Illinois Department of Securities. In this appeal, he contends that the same conduct that comprised the offense of conviction—his fraudulent securities sales—also violated the consent decree, and that to enhance his sentence for violating

tion hearing, which was held after Burke spoke to Libet while released on bond. Based on Libet's testimony, the court revoked Burke's bond and ordered him detained.

**2.** Burke cites *United States v. Fiala,* 929 F.2d 285, 289 (7th Cir.1991), and U.S.S.G. § 3C1.1 commentary n. 1 for the proposition that the district court should have evaluated his story in "the light most favorable to the defendant." Application Note 1 states:

> This provision [U.S.S.G. § 3C1.1] is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt[,] ... refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or

statements should be evaluated in a light most favorable to the defendant.

The clear meaning of Application Note 1 is that a mere denial of guilt or a refusal to enter a guilty plea does not constitute obstruction of justice, and that a defendant's simple denial of guilt should be construed in the light most favorable to him. Similarly, *Fiala* held that a defendant's false statement to a police officer that he had nothing illegal in his car was merely a denial of guilt, and thus, not a basis for enhancing his sentence under § 3C1.1. *Fiala,* 929 F.2d at 290.

Burke's conduct in this case went far beyond a simple denial of guilt. He spoke to a material witness while released on bond and agreed to shift the blame for fraudulent securities sales to a fictitious person. Nothing in Application Note 1 or *Fiala* requires a district court to construe a defendant's explanations of witness tampering in the light most favorable to him.

the consent decree therefore constitutes double counting.

At the outset, we note that Burke did not present this argument to the district court. Although he did object to the enhancement under § 2F1.1(b)(3)(B), his argument before the district court was that, while he knew that the securities he sold after he entered into the consent degree were fraudulent, he believed that the securities were somehow outside the precise proscriptions of the consent decree. Perhaps recognizing that this argument is ludicrous, Burke has now changed his argument to his current claim of double counting. In any case, by failing to raise this double counting argument in the district court, Burke has waived it for appellate review. *See United States v. Gonzalez,* 933 F.2d 417, 429 (7th Cir.1991) (neither a general objection nor a specific objection on other grounds preserves an argument for appellate review). Thus, our review of Burke's objection to his sentence enhancement under § 2F1.1(b)(3)(B) is only for plain error. *United States v. Soto,* 48 F.3d 1415, 1421 (7th Cir.1995).

■■■ We find no error in this enhancement, plain or otherwise. Impermissible double counting under the Guidelines occurs when "identical conduct is described two different ways so that two different adjustments apply." *United States v. Haines,* 32 F.3d 290, 293 (7th Cir.1994). A district court does not engage in double counting when it enhances a defendant's sentence for separate elements of the same act, provided that it does not enhance the defendant's sentence twice for the same element.

Burke's argument is premised on an erroneous description of his conduct in this case. He seeks to conglomerate all the elements of his offense under the single description "fraudulent securities sales." By his reasoning, the district court should not have enhanced Burke's offense level under § 2F1.1(b)(1)(I), because the same conduct that comprised his fraudulent securities sales also caused losses to his victims in excess of $200,000, nor should the court have enhanced his offense level under § 2F1.1(b)(2)(B), because the same conduct that comprised his fraudulent securities sales also involved more than minimal planning. This reasoning is obviously untenable: the specific offense characteristics under § 2F1.1(b) properly modify the base offense level depending on the individual elements of the defendant's crime.

The district court set Burke's base offense level at 6 under § 2F1.1(a) for selling fraudulent securities. That base offense level did not take into account the additional fact that Burke sold the fraudulent securities while under a consent decree not to sell such securities. Burke's violation of the consent decree was a separate element of his offense. Thus, the district court did not impermissibly double count the same conduct when it enhanced Burke's offense level by 2 points under § 2F1.1(b)(3)(B), and accordingly, we find no plain error.

### III. Abuse of a Position of Trust

■■■ Burke next contends that the district court improperly enhanced his offense level by 2 points under U.S.S.G. § 3B1.3 for abuse of a position of trust or use of a special skill. He makes two arguments in this respect: He first argues that under his plea agreement, the government could argue only that he used his special skills as a lawyer to facilitate his commission of the offense, whereas the district court found that Burke held and abused a position of trust with his victims. That is, Burke argues that the "special skills" prong of § 3B1.3 is distinct from the "abuse of trust" prong, and that under his plea agreement, the court could enhance his sentence for only the former.

This argument is quite simply wrong. Burke's plea agreement specifically stated that the district court was not a party to the plea agreement, nor was it bound by the agreement in determining his sentence. Nothing in the plea agreement prevented the district court from considering all of Burke's relevant conduct and determining which sections of the Guidelines—or which prongs of a single section of the Guidelines—applied to his case. Thus, the district court could consider whether or not Burke abused a position of trust to facilitate his fraud. *See United*

*States v. Eppinger*, 49 F.3d 1244, 1250 (7th Cir.1995).

■ Burke's second argument is that he did not hold a position of trust vis-a-vis his victims. He claims that his victims invested with him based largely upon references from satisfied investors,[3] or from seeing his advertisements in various newspapers, and that he merely sold securities to his victims in arm's-length commercial transactions. He thus maintains that he never held any position of trust with respect to his victims.

However, the district court heard testimony from some of Burke's victims, several of whom first met Burke when he worked at the AART selling packages of services (such as living wills) to retired individuals. The court found that:

> [T]he facts of the case ... clearly demonstrate to me that Mr. Burke was able to use his position with [his victims] to convince them to invest in the fraudulent scheme that he devised. I think the conclusion is really inescapable, that people would not invest their money with a total stranger that they didn't trust, that they weren't responding to the marketing devices used by [Burke] when they agreed to invest [their] money. They responded to [the] AART to do living wills or trusts or whatever these documents were, and through that relationship that [Burke] developed with them, the trust was created that allowed Mr. Burke to convince them to invest ... with him in the fraudulent scheme.

Burke frankly admits in his appellate brief that three of his victims knew him from his previous sales job at the AART. Although he argues that his sales job at the AART did not involve a position of trust, that fact is not relevant. What is relevant is whether Burke relied on the relationships he previously had established with those three victims to further his fraudulent securities scheme. If Burke did create a relationship of trust with customers from his sales for the AART, and then abused that trust in order to sell his fraudulent securities, then the district court

properly enhanced his sentence under § 3B1.3. *See United States v. Strang*, 80 F.3d 1214, 1220 (7th Cir.1996) (defendant abused a position of trust when he befriended elderly investors whom he then defrauded). If, on the other hand, Burke was simply a telephone salesman for the AART who had little or no personal contact with his customers and no access to their confidential financial information, then his mere acquaintance with three of his victims from his sales for the AART would not be a close enough relationship to create a position of trust. *See United States v. Dorsey*, 27 F.3d 285, 289 (7th Cir. 1994) (mere commercial relationship between defendant and victims will not support an enhancement for abuse of position of trust), *cert. denied*, 513 U.S. 1133, 115 S.Ct. 949, 130 L.Ed.2d 892 (1995).

We review the district court's determination that a defendant held a position of trust for clear error. *United States v. Bhagavan*, 116 F.3d 189, 192 (7th Cir.1997). We do not believe the record before us is sufficient to determine whether Burke's relationship with the victims he knew from his sales job for the AART was close enough to create a position of trust. Accordingly, we vacate Burke's sentence with respect to this enhancement and remand this case to the district court for a determination of this question.

**IV. Acceptance of Responsibility**

■ Burke also takes issue with the district court's refusal to decrease his offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. Again, we review the district court's determination for clear error. *United States v. Schuler*, 34 F.3d 457, 460 (7th Cir.1994).

■ Our previous discussion of Burke's attempts to obstruct the investigation and prosecution of this case largely disposes of this issue. As the commentary to § 3E1.1 makes clear, "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not

---

**3.** Burke ran a pyramid scheme in which his initial investors were paid out of the proceeds invested by later investors. Thus, in the beginning there were "satisfied" investors who recouped their investments with interest.

accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 commentary n. 3. Although the commentary notes that there may be extraordinary cases in which a downward adjustment for acceptance of responsibility is appropriate despite an upward adjustment for obstruction of justice, we do not think the district court committed clear error in deciding that this is not such a case. As the district court noted, in addition to his obstruction of justice, Burke frivolously contested his relevant conduct in this case: he denied that he had obstructed the prosecution of this case or that he violated the Illinois consent decree. This ground alone was sufficient to deny Burke any reduction for acceptance of responsibility. *See id.* commentary n. 1(a).

Moreover, at Burke's sentencing hearing, the government presented evidence showing that even after Burke had pleaded guilty in this case, he attempted to convince his landlord to invest in a "second mortgage acceleration program" using the same type of fraudulent mortgage deeds at issue in this case. This conduct is not consistent with an acceptance of responsibility. Accordingly, we find no error—let alone clear error—in the district court's decision not to credit Burke with acceptance of responsibility.

## V. Restitution Order

■ Burke raises two issues on appeal challenging his order of restitution. First, he submits that the district court's judgment failed to establish a payment schedule for restitution. This is simply an incorrect statement of fact. The judgment order calls for immediate payment. As our case law makes clear, " 'immediate payment' does not mean 'immediate payment in full;' rather it means 'payment to the extent that the defendant can make it in good faith, beginning immediately.' " *United States v. Jaroszenko,* 92 F.3d 486, 492 (7th Cir.1996) (citation omitted). Thus, the district court has neither failed to establish a payment schedule nor improperly delegated the determination of restitution to the probation office.

■ Burke's second challenge to his restitution order does have merit, although ultimately it is of no benefit to him. The district court's judgment lists sixteen victims to whom Burke owes restitution. For eleven of those victims, the judgment states the amount of restitution each one is owed, but for the remaining five victims, the judgment lists the amount owed as "unknown." The sum of the restitution owed to the eleven victims whose restitution amounts are specified is $214,377.50, but the judgment states that Burke must pay total restitution in the amount of $252,377.50.

Burke claims that the $252,377.50 figure is a miscalculation, and that he actually owes only $214,377.50 to the eleven victims whose restitution amounts are listed. Again, he is wrong: The $252,377.50 figure is based upon the United States Attorney's oral representation at the sentencing hearing that this was the full amount owed to all sixteen victims, and it is clear from the record that the district court intended that Burke repay all sixteen victims in full. *See United States v. Wolf,* 90 F.3d 191, 193 (7th Cir.1996) (in ascertaining the intent of the district court at sentencing, this court must look to the record as a whole).

Nonetheless, the judgment does not detail how the $38,000 (the difference between the $252,377.50 restitution owed and the $214,-377.50 allocated to the eleven victims whose restitution awards are specified) is to be allocated among the five victims whose restitution awards are listed as "unknown." Accordingly, we must remand this case for the additional purpose of specifying the amount of restitution owed to each of the five remaining victims.

Finally, for the sake of completeness, we note that on page 5 of the judgment, the district court incorrectly stated that Burke's total offense level is 20. This was the level the probation office originally recommended for Burke, based on its belief that Burke should not receive the enhancement for abuse of a position of trust. The district court disagreed with the probation office's determination, however, and increased Burke's offense level by 2 points for abuse of a position of trust, thereby bringing his offense level to 22. The district court stated in the sentencing hearing that Burke's total

offense level was 22, and the court's oral pronouncements at sentencing are dispositive. *United States v. Makres,* 851 F.2d 1016, 1017 (7th Cir.1988). Accordingly, on remand, the district court should correct Burke's judgment to reflect his total offense level of 22.

## VI. Conclusion

We therefore REMAND this case to determine whether Burke held a position of trust vis-a-vis the victims he knew from his sales job for the AART, to correct Burke's judgment to reflect the restitution owed to each of his sixteen victims, and to make the technical correction regarding his total offense level.

VACATED and REMANDED WITH INSTRUCTIONS.