Frank Edward ABBOTT, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 99–1069.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 1999.

Decided Oct. 29, 1999.

David B. Mote (argued), Office of the Federal Public Defender, Springfield, IL, for Petitioner–Appellant.

Richard N. Cox, Office of the United States Attorney, Urbana Division, Urbana, IL, Stephen A. Kubiatowski (argued), Office of the United States Attorney, Springfield, IL, for Respondent–Appellee.

Before ESCHBACH, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Frank Edward Abbott appeals the denial of his 28 U.S.C. § 2255 motion, in which Abbott claimed that he was denied a fair trial in violation of his due process rights when the government failed to disclose that two of its key witnesses received promises of leniency in exchange for testifying against Abbott. After conducting an evidentiary hearing, the district court concluded that Abbott had failed to demonstrate the existence of any undisclosed agreements. We affirm.

Abbott became the subject of a federal investigation after Michael Jenkins revealed to authorities that Abbott was dealing in methamphetamine and marijuana. When Jenkins provided this information to authorities, he was on probation from a 1992 state conviction for aggravated battery. On December 21, 1992, authorities sent Jenkins to Abbott's residence to buy drugs. Others including Frank Strong were present at Abbott's residence while Jenkins was there purchasing methamphetamine. The next day, ATF Agent Paul Vido obtained a search warrant for Abbott's residence and, during the search, uncovered drug records, drug paraphernalia, cash, methamphetamine and marijuana, a scale, and a holstered pistol and ammunition.

Abbott was charged with possession with intent to distribute methamphetamine and marijuana, 21 U.S.C. § 841(a)(1) (Counts 1 and 2); possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Count 3); and use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c) (Count 4). In presenting its case to the jury, the prosecution called Jenkins and Strong. Jenkins testified about his drug dealings with Abbott and stated that he had a felony conviction for burglary and was at that time incarcerated for a probation violation. Jenkins testified that he had no deals with the prosecution. Strong testified that he was also then in state custody on charges of possession of a weapon by a felon and burglary. Strong identified the pistol seized during the search of Abbott's residence as the one he stole in the burglary and later sold to Abbott. Like Jenkins, Strong denied having any deals with the prosecution. The prosecutor emphasized at various points in his closing argument that the testimony of Strong, in particular, was believable, since he voluntarily testified without any deal from the government.

Abbott was convicted on all counts and sentenced to concurrent terms of 262 months on Counts 1 and 3, a concurrent term of 60 months on Count 2, and a consecutive term of 60 months on Count 4, resulting in a total term of 322 months. After we vacated Abbott's sentences on direct appeal, see United States v. Abbott, 30 F.3d 71 (7th Cir.1994), the district court resentenced Abbott to concurrent terms of 210 months on Counts 1 and 3, with Counts 2 and 4 remaining unchanged, resulting in a total term of 270 months. In Abbott's next appeal, see United States v. Abbott, 1996 WL 628245 (7th Cir. Oct.28, 1996) (unpublished), we reversed the § 924(c) conviction based on Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and on remand the district court reimposed the 210–month total term of imprisonment as to Counts 1, 2, and 3. Abbott appealed yet again, and this time we affirmed the district court's denial of Abbott's request for a downward departure based on postoffense rehabilitative efforts. See United States v. Abbott, 1997

WL 659826 (7th Cir. Oct.9, 1997) (unpublished).

In May 1998, Abbott filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that AUSA Lawrence Beaumont had failed to disclose deals struck with prosecution witnesses Jenkins and Strong, in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Abbott further alleged that AUSA Beaumont knowingly permitted Strong to commit perjury when he testified at Abbott's trial that he had no agreements with the prosecution. The district court conducted an evidentiary hearing on November 6, 1998. Strong, Jenkins, ATF Agent Vido, Coles County Public Defender Lonnie Lutz, Abbott's father, AUSA Beaumont, and Coles County State's Attorney Steve Ferguson all testified. After considering the testimony and exhibits, the district court concluded that Abbott had failed to demonstrate the existence of any agreements between AUSA Beaumont and the witnesses. The district court accordingly denied Abbott § 2255 relief.

In his § 2255 motion, Abbott claimed that the government improperly withheld information concerning promises made to witnesses Strong and Jenkins in exchange for their testimony against Abbott. The substantive principles underlying Abbott's claim were first announced in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the Supreme Court established that the prosecution violates due process by "suppressing favorable evidence that is material either to the guilt or punishment of the accused, 'irrespective of the good faith or bad faith of the prosecution.'" *United States v. Gonzalez*, 93 F.3d 311, 315 (7th Cir.1996) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). The Supreme Court subsequently extended *Brady* in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 ·(1972), by holding that the prosecution violates due process by suppressing impeachment evidence when such

evidence would be material to guilt or innocence. *See id.* at 154, 92 S.Ct. 763. To have succeeded on his *Giglio* claim, Abbott was required to establish that (1) the prosecutor suppressed evidence, (2) such evidence was favorable to the defense, and (3) the suppressed evidence was material. *See United States v. Earnest*, 129 F.3d 906, 910 (7th Cir.1997). At issue here are the factual and credibility determinations made by the district court in concluding that Abbott failed to establish a *Giglio* violation. In assessing the district court's denial of Abbott's § 2255 motion, we review factual findings for clear error and conclusions of law de novo. *Arango–Alvarez v. United States*, 134 F.3d 888, 890 (7th Cir.1998).

Before addressing Abbott's *Giglio* claim, we note that Abbott appears to misunderstand the nature of our inquiry on appeal. Rather than challenging the district court's ultimate conclusion that the government had struck no bargain with either Strong or Jenkins, and hence that no *Giglio* violation had occurred, Abbott isolates three alleged misstatements made by the district court in its memorandum opinion and order denying him § 2255 relief. We decline Abbott's invitation to debate the correctness of such inconsequential statements and instead focus our attention on the more salient issue of whether the district court properly concluded that Strong and Jenkins were promised nothing for their testimony.

To have raised a successful *Giglio* claim, Abbott was first required to demonstrate that the prosecution suppressed evidence. Conflicting testimonial and documentary evidence was introduced at Abbott's evidentiary hearing. Abbott places particular emphasis on two letters, one from Strong to AUSA Beaumont, and one from Lutz to Abbott. In the former, dated July 16, 1993, Strong confirms AUSA Beaumont's purported promises to keep Strong from being prosecuted for his state parole violation and to get him probation and participation in a drug re-

habilitation program on the state burglary conviction. In the letter from Lutz to Abbott, which is dated over four years after Abbott's trial, Lutz states that Jenkins and Strong agreed to testify against Abbott in return for leniency on the then pending state charges against them. Abbott also submitted two affidavits from Philip Geier, an investigator with the Federal Public Defender's Office in the Central District of Illinois, in which Geier recounts interviews he conducted with Strong and Strong's probation officer, Abby Haughee. According to Geier, Haughee told him that, while state charges were pending against Strong, a deal was worked out between State's Attorney Ferguson and an unnamed federal prosecutor for Strong to testify in a federal case. Geier also attests that Haughee recalled that, after cooperating, Strong received only four years probation for the burglary charge instead of being returned to the Illinois Department of Corrections. Geier's other affidavit recounts an interview with Strong, in which Strong told Geier that Lutz and State's Attorney Ferguson negotiated a plea agreement for him to be sentenced to four years probation in exchange for his testimony against Abbott. Geier further attests that Strong told him he was instructed to testify at Abbott's trial that he had no deals with the prosecution. Abbott's other exhibits included: a letter dated April 6, 1993, from AUSA Beaumont to Lutz, documenting the cooperation of Strong and Jenkins in Abbott's trial; a letter dated July 22, 1993, from AUSA Beaumont to the Illinois Prison Review Board, advising of Strong's cooperation; a probation order indicating that Strong received only four years probation; docket sheets from Jenkins' aggravated battery charge showing that the hearing on the petition to revoke probation was continued without explanation until after Abbott's trial; a letter from AUSA Beaumont to State's Attorney Ferguson, advising that Jenkins but not Strong would be prosecuted for possession of a firearm by a felon; a request by AUSA Beaumont to a supervisor to make a motion for a substantial assistance downward departure under U.S.S.G. § 5K1.1 on behalf of Jenkins; and a judgment showing that Jenkins received a sentence of 55 months for the gun possession charge, a departure from his guideline range of 84–105 months.

The only testimonial evidence supporting Abbott's claim was that of Strong. Strong initially invoked the Fifth Amendment when asked if he had a deal with the federal prosecutors. Strong later testified, however, that ATF Agent Vido told him to testify that he received nothing in exchange for his testimony and that, in contrast with his trial testimony, the letter he sent to AUSA Beaumont accurately described their true agreement. When asked if he lied at Abbott's trial as to the existence of an agreement, Strong again invoked the Fifth Amendment.

Other evidence, however, negated Abbott's assertion that an agreement existed. First, both Jenkins and Strong conceded that they had denied the existence of any agreement with the prosecution at Abbott's trial. Second, AUSA Beaumont and ATF Agent Vido testified that there were no deals with Jenkins or Strong. Third, State's Attorney Ferguson testified that he had made no agreement with AUSA Beaumont concerning the fate of Jenkins or Strong if they testified in the Abbott case. Most importantly, though, both Strong and Lutz contradicted the documents that suggest the existence of an agreement. For example, in his letter to AUSA Beaumont, Strong confirmed that the prosecutor had told him that no promises could be made, and at the evidentiary hearing, Strong reiterated that AUSA Beaumont had said he could promise nothing.

Lutz similarly testified at the evidentiary hearing that AUSA Beaumont told him no promises could be made. In discussing a meeting between himself, AUSA Beaumont, and Strong, Lutz recounted AUSA Beaumont's statement that although "no

written promises or representations" could be made, perhaps a "recommendation or statement from the federal authorities" could be made to the State's Attorney on Strong's behalf. On cross-examination, Lutz testified that he did not recall any discussions at the meeting with AUSA Beaumont and Strong regarding Strong's parole.

On balance, while we acknowledge that the evidence was not entirely consistent, we cannot conclude that the district court's resolution of the conflicting evidence was clearly erroneous. In assessing the evidence, the district court was required to make credibility determinations, and, as we have reiterated in the past, arguments merely urging a reevaluation of a district court's credibility determinations "are wasted on an appellate court." *United States v. House*, 110 F.3d 1281, 1286 (7th Cir.1997) (internal quotation marks and citation omitted). Therefore, absent an undisclosed agreement, Abbott's *Giglio* claim necessarily fails. Accordingly, the judgment of the district court denying Abbott § 2255 relief is AFFIRMED.