Opinion issued July 29, 2010






 

 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00621-CR

____________


ROY LEE GUSMAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 176th District Court 

Harris County, Texas

Trial Court Cause No. 1091413






MEMORANDUM OPINION

 A jury convicted appellant, Roy Lee Gusman, of capital murder and the trial
court assessed punishment at confinement for life. In his first point of error, appellant
contends that the trial court abused its discretion by denying appellant's motion for
new trial. In his second and third points of error, appellant complains that the trial
court erred in admitting testimony from appellant's codefendant with whom the State
had entered into a plea bargain agreement. In his fourth point of error, appellant
asserts that the trial court erred in denying his requested instruction on the lesser-
included offense of murder.

 We affirm.

BACKGROUND


 Appellant and Herlinda Gusman ("Herlinda") were indicted as co-defendants
for the offense of capital murder. Because the State did not seek the death penalty
against either defendant, they each faced a sentence of automatic life imprisonment
without parole if convicted. 

 The complainant in the case was shot and killed outside of a Houston bar. Her
body was found lying next to her car in the parking lot, the driver's side door of the
car was open, and the car had blood spatter on it. The complainant's keys were found
near her body, and her purse, which contained cash and credit cards, was on the front
seat of her car. The cause of the complainant's death was a single gunshot wound to
her neck. 

 On November 1, 2006, Detective Sidney Miller obtained information from
Edward Medel linking appellant and Herlinda to the offense, and obtained warrants
for their arrest. On November 2, 2006, appellant and Herlinda were arrested pursuant
to the warrants by Harris County deputy sheriffs, who also seized appellant's car. 

 The club's surveillance videos and other evidence, including Herlinda's
testimony, showed that the complainant was shot around 11:45 p.m. and that
appellant, Herlinda, and appellant's car were present at the time and involved in the
shooting. 

 Appellant's defense at trial was that he murdered the complainant, but did not
commit capital murder. The State called two witnesses to counter this theory. First,
Jamal Bingham, a jail inmate, testified that appellant told him that he shot the
complainant after she refused to give him her purse. Second, Herlinda testified that
appellant shot the complainant in the course of robbing her. Appellant did not testify
at trial. 

 During his opening statement, State's attorney Brad Hart told the jury that
Herlinda had been promised nothing in exchange for her testimony against appellant:

 HART: You're going to hear from Herlinda Gusman herself. 
She's been charged with capital murder also. 
You're going to hear that she does not have any
deal, any promise from me. Her deal is that she gets
on the stand and tells the truth and she hopes for the
best. And she's going to tell you about the plan that
night to rob someone at that bar, and she's going to
tell you how this defendant is the one who went up
to [the complainant] and shot her. 


 When Herlinda was called to testify, the State began by establishing that she
had not been offered any leniency by the State in exchange for her testimony:

 Q: Now, I want to get this out up front before we get into
anything else.


 A: Yes, sir.


 Q: You're sitting here, you're charged with the same offense
as Roy Gusman, your cousin, your husband's cousin; is
that right?


 A: Yes, sir.


 Q: You and I have talked on a couple of occasions with your
lawyer present and once without your lawyer present; is
that right?


 A: Correct.


 Q: Has [sic] there been any promises made to you by me on
behalf of the State of Texas in order to get you to testify
here today? 


 A: No, sir.


 Q: Have I promised you any certain sentence that you're going
to get if you testify here today?


 A: No, sir.


 Q: What is your purpose then, you're charged with a capital
murder, same offense as him, what's your purpose for
coming in here, knowing that you're facing this and telling
this jury about what happened on October 29, 2006?


 A: To get the truth out.


 Q: Now, I don't want to leave the wrong impression with
anybody. You're hoping for something good to happen to
you; is that right?


 A: Yes, sir.


 Q: And you're not just doing this knowing that you're going
to get - thinking that you're going to get a life sentence
later; is that right?


 A: Correct.


 Q: Are you- since there are no promises being made, are you
hoping for the best?


 A: Yes, sir always.


 Q: Are you expecting to get anything, are you expecting to get
probation or anything like that?


 A: I always expect the best, but I'm expecting the worst. 


 Q: And that's because there's nothing on the table that you
have to look forward to depending on what happens; is that
right?


 A: That is correct. 



 Following appellant's conviction, appellant's defense counsel learned that the
trial prosecutor, Brad Hart, was authorized by the acting district attorney of Harris
County (1) to reduce Herlinda's sentence in exchange for her testimony against
appellant. (2)
 In response to this information, appellant filed a motion for new trial
alleging that (1) Herlinda committed perjury when she told the jury she received no
promises of leniency in return for testifying against appellant, and (2) the State had
a constitutional duty to disclose to appellant's counsel any promises made to Herlinda
in exchange for her testimony. 

 At an evidentiary hearing on appellant's motion for new trial, Hart testified that
he received approval before appellant's trial to reduce Herlinda's sentence from life
imprisonment to as low as fifteen years imprisonment. Hart testified that the
complainant's family had approved the reduced sentence because they recognized
that Herlinda's testimony was needed to prove an element needed for conviction. 
Hart said he was not obligated to offer Herlinda 15 years if she did not truthfully
testify, and that the 15 year floor established by the prior approval gave him the
authority to make any offer at or over it to Herlinda after appellant's trial without
obtaining further approval. (3) Hart told the trial court that he did not convey this
information to Herlinda's attorney or to defense counsel.

 After defense counsel testified at the hearing, the following exchange occurred:

 Trial Court: Let me ask you this question.


 Defense Counsel: Sure, sir.


 Trial Court: Why did that surprise you to learn that?


 Defense Counsel: Because, in fact, the impression given to the
jury was we're hoping for what may, we're
hoping for what may, we're hoping for what
may, we're hoping for the best.


 Trial Court: Based on what Ms. Gusman said- 


 Defense Counsel: Right. Well, and actually- 


 Trial Court: -there-


 Defense Counsel: I'm sorry, sir.


 Trial Court: See, I'm hearing-I'm-I'm hearing one thing
and I'm thinking another. In my position I
don't know what goes on behind the scenes. 
I'm hearing for the first time that somebody
prior to trial had gone and received an
approval to do something with a co-defendant
but wasn't going to tell anybody about it. 
Okay. Why does that surprise you, if that's
the way it happened?


 Defense Counsel: Why does that surprise me?


 Trial Court: Yes.


 Defense Counsel: Because, in fact, it is a consideration. It is a
benefit.


 Trial Court: How do you figure? If nobody's told about it,
how is it a consideration?


 Defense Counsel: Well-here's-okay.


 Trial Court: Here's what I've been approved to do. And
again, I don't understand the reason why I'm
not-I mean, I-in the whole dynamic of the
trial which occurred, when your client pled-
I can't remember- 


 Defense Counsel: Not guilty to capital murder.


 Trial Court: Not guilty to capital murder. It was along the
lines of not guilty of capital murder.


 Defense Counsel: Correct.


 Trial Court: He was adamant about that, that he-that he
didn't commit a capital murder but he
committed a murder, was my impression. So
there-I guess what I'm trying to understand is
is this-nobody couldn't have been caught by
surprise as to what occurred during the trial,
if that makes sense, when she says I have no
deal, because she had the deal, is that not
correct?


 Defense Counsel: Well, no.

 

 Trial Court: If you- there's a disagreement there. You're
contending she knew of a deal before she
testified.


 Defense Counsel: She knew she would receive some type of
consideration.


 Trial Court: That's not my question.


 Defense Counsel: Well, I'm sorry, then I misunderstood you,
your Honor.


 Trial Court: Did she know she was going to get an
aggravated robbery reduction and 15 years,
based upon the questions on direct, based
upon the questions on cross?


 Defense Counsel: Well, the questions on cross are predicated
upon what I'd been told. I mean, I can't.


 Trial Court: Again.


 Defense Counsel: If I am, in fact, told of the consideration that
she had been allowed and the allowance is
and the approval is 15 years, it would have
been fodder for cross-examination.

 

 Trial Court: Exactly. If somebody, if Mr. Hart had told
everybody here's what I have, and I can see
where that would be the consideration that the
jury would have heard, but because he didn't
tell you, or Mr. Loper-I guess I'm trying to
understand what the surprise is. I mean- 

 

 Defense Counsel: Well, the surprise- 

 

 Trial Court: I mean- 

 

 Defense Counsel: Okay.

 

 Trial Court: Is he bound to tell you this?

 

 Defense Counsel: I do believe so. I do believe so, your Honor,
under-I believe under Brady he would be
absolutely obligated- 

 

 Trial Court: Okay.

 

 Defense Counsel: -to tell me that, in fact, he's received
approval basically to plead- 

 

 Trial Court: All right.

 

 Defense Counsel: -to plead to the lesser included and 15 years.

 

 Trial Court: See, I believe that's another issue. So your
motion for new trial is based on perjury
committed by Ms. Gusman.

 

 Defense Counsel: No, your Honor. It also speaks to due process
which involves more than perjury. It speaks
to due process under federal law and Brady.

 

 Trial Court: Okay. That's-I understand your contention,
but that's not how I read the motion.


 At the end of this exchange, the trial court denied appellant's motion for new
trial.

DENIAL OF MOTION FOR NEW TRIAL

 In his first three points of error, appellant claims that the trial court erred in
denying his motion for new trial based on the State's failure to inform his trial
counsel that Herlinda had been offered fifteen years for aggravated robbery in
exchange for her testimony. Specifically, appellant claims that the State's failure to
disclose this information and Herlinda's perjured testimony deprived appellant of due
process of law and violated the dictates of Brady v. Maryland. A. Standard of Review

 We review a trial court's ruling on a motion for new trial under an abuse of
discretion standard of review. See Webb v. State, 232 S.W.3d 109, 110 (Tex. Crim.
App. 2007); Garcia v. State, 246 S.W.3d 121, 147 (Tex. App.--San Antonio 2007,
pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling
and uphold the trial court's ruling if it is within the zone of reasonable disagreement. 
Webb, 232 S.W.3d at 110; Garcia, 246 S.W.3d at 147. A trial court abuses its
discretion in denying a motion for new trial only when no reasonable view of the
record could support the trial court's ruling. Webb, 232 S.W.3d at 112; Garcia, 246
S.W.3d at 147-48.

 The credibility of witnesses is primarily a determination for the trial court. 
Hoyos v. State, 951 S.W.2d 503, 511 (Tex. App.--Houston [14th Dist.] 1997, pet.
granted). As finder of fact, the trial judge may accept or reject any part or all of the
testimony given by State or defense witnesses. See Charles v. State, 146 S.W.3d 204,
213 (Tex. Crim. App. 2004) (holding court of appeals must defer to implied factual
findings of trial court). A trial court does not abuse its discretion by overruling a
motion for new trial when the evidence adduced at the hearing on the motion is
conflicting. See Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001);
Hughes v. State, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

 As a general rule, appellate courts should afford almost total deference to the
trial court's determination of historical facts supported by the record, especially but
not only where based on an assessment of credibility and demeanor. See Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Guardiola v. State, 20 S.W.3d 216,
221-22 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). The same amount of
deference should also be given to rulings on application of law to fact questions, also
known as mixed questions of law and fact. Manzi v. State, 88 S.W.3d 240, 243 (Tex.
Crim. App. 2002).

B. Duty to Correct False Evidence

 The prosecutor's constitutional duty to correct known false evidence is well
established both in law and in the professional regulations that govern prosecutorial
conduct. Duggan v. State, 778 S.W.2d 465, 468 (Tex. Crim. App. 1989) (citations
omitted). This overriding duty falls upon the prosecutor in his capacity as the State's
representative in criminal matters. Id. As a trustee of the State's interest in providing
fair trials, the prosecutor is obliged to illuminate the court with the truth of the cause,
so that the judge and jury may properly render justice. Id. Thus, the prosecutor is
more than a mere advocate, but a fiduciary to fundamental principles of fairness. Id.
(citing Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935)). 

 The duty to correct known false evidence is not only a prosecutorial ethic, but
a constitutional requirement. Id. (citations omitted). It does not matter whether the
prosecutor actually knows that the evidence is false; it is enough that he or she should
have recognized the misleading nature of the evidence. Id. (citing U.S. v. Agurs, 427
U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976)). Nor does it matter that the falsehood goes
merely to an issue of credibility. Id.

 The purpose of imposing this paramount constitutional duty is "not to punish
the prosecutor or the trial court for the error committed, but rather to avoid an unfair
trial to the accused." Id. at 469 (quoting Burkhalter v. State, 493 S.W.2d 214, 218
(Tex. Crim. App. 1973)). Stated another way, false evidence, left uncorrected, can
mislead the factfinder, thereby misdirecting the due course of law and diverting due
process from its intended progression toward a just and fair trial. Id. Because false
evidence corrupts the truth seeking function of trial, a new trial will be necessary
unless the false evidence does not violate the accused's right to due process. Id.

C. Did Herlinda's Testimony Constitute False Evidence?

 Appellant asserts that the facts in the instant case are similar to those
confronted by the Court of Criminal Appeals in Duggan v. State. The appellant in
Duggan argued that the State's failure to correct the misleading testimony of two
accomplice witnesses, who denied they exchanged their testimony in favor of
leniency from the State, violated appellant's due process rights. Id. at 466. The
prosecutor in that case confirmed the existence of an understanding between the
accomplices and the State when he admitted telling the accomplices that he would
consider leniency in exchange for their testimony. Id. at 468. In holding that the
appellant's due process rights were violated by the prosecutor's use of the testimony,
the Court explained: 

 Because some sort of understanding between the State and the
accomplices did indeed exist, the accomplices' firm, sweeping assertions
that no such agreements existed lent a false impression to the court . . .
. Given the prosecutor's post-trial admissions, the true nature of the
relationship between the accomplices and the prosecution was
misrepresented to the jury. This false impression, which the prosecutor
should have perceived, nevertheless went unrectified throughout trial.

 Id.

 The facts in the instant case are inapposite to those in Duggan. Here, Hart's
testimony at the motion for new trial hearing established the following: (1) Hart
obtained pretrial authorization to offer to reduce the capital murder charge against
Herlinda to a lesser-included offense and offer her a sentence as low as fifteen years
if she testified truthfully against appellant at his trial; (2) Hart's authorization was
conditioned upon Herlinda testifying truthfully at appellant's trial and the approval
of the complainant's family; (3) Hart did not disclose the fact that he had such
authorization to anyone else, including Herlinda, her counsel, or appellant's trial
counsel, prior to or during appellant's trial; (4) Hart made no express or implied plea
bargain offers, promises, or representations to Herlinda or her counsel concerning any
sentence she would receive for testifying truthfully against appellant before or during
appellant's trial; (5) Hart's stated position to Herlinda and her counsel concerning her
testimony against appellant was that she testify truthfully and hope for the best. No
evidence of any kind introduced at the motion for new trial hearing or otherwise
appearing in the appellate record shows that either Herlinda or her counsel was aware
of Hart's plea bargaining authorization with respect to her case before or during
appellant's trial.

 Thus, unlike the situation in Duggan, the record is devoid of any indication
that there was any understanding or agreement, express or implied, concerning any
benefit that Herlinda would receive from the State from her testimony. Appellant has
not established that any agreement existed between Herlinda and the State and cannot
establish that Herlinda's testimony was perjured. Therefore, appellant's due process
arguments fail. See Bell v. Bell, 512 F.3d 223, 234 (6th Cir. 2008) (holding "without
an agreement, no evidence was suppressed, and the State's conduct, not disclosing
something it did not have, cannot be considered a Brady violation."); Collier v. Davis,
301 F.3d 843, 850 (7th Cir. 2002) (holding "if there was no understanding, there was
no impeachment evidence to disclose."); Abbott v. United States, 195 F.3d 946, 950
(7th Cir. 1999) (2000) (same); See also Gilday v. Callahan, 59 F.3d 257, 268-71 (1st
Cir. 1995) (holding government's failure to disclose understanding between
prosecutor and witness's attorney that was not communicated to witness harmless);
Williams v. Scott, 35 F.3d 159, 162-63 (5th Cir. 1994) (same).

 Accordingly, we overrule appellant's first, second, and third points of error.

LESSER-INCLUDED OFFENSE CHARGE

 In his fourth point of error, appellant asserts that the trial court committed
reversible error because it failed to submit to the jury a lesser charge on murder. At
trial, appellant made the following request for submission of the lesser-included
offense:

 The reliability and the credibility of the evidence and the witnesses that
testified as to the robbery aspect is in question. The last witness, in fact,
and the fact through numerous witnesses has been brought up that there
is, in fact, no personalty taken from this particular victim in terms
of--and I won't repeat the personalty items we talked about, the purse,
whatnot, that there has been no evidence, physical evidence that would
go along with the aspect of robbery, and the fact that there is [sic]
inconsistent statements between the defendants in reference to their
interrogation has also been brought up through this last witness and, in
fact, that the original probable cause warrants were arrested--were
issued--excuse me--solely on the basis of murder. And I do believe
that for the reasons therein stated and actually the totality of the record
would warrant, in fact, a lesser included charge as to murder.

 However, on appeal, appellant argues that "the testimony of co-defendant
Herlinda Gusman presented evidence that the appellant did not intentionally shoot
[the complainant], notwithstanding her contradictory testimony or the testimony of
any other witness that this was his intent." Specifically, he contends that his
statement to Herlinda that "I shot over [the complainant]," was "evidence from which
a rational trier of fact could have concluded beyond a reasonable doubt that appellant
may not have intentionally and knowingly caused the complainant's death."
Appellant argues that while he admitted to Herlinda he had attempted to commit a
robbery during which he shot his gun in the direction of the complainant, appellant
may not have intentionally or knowingly caused the complainant's death, raising the
possibility that if appellant is guilty, he is guilty only of murder. Both murder and felony murder can be lesser-included offenses of capital
murder. See Smith v. State, 187 S.W.3d 186, 195 (Tex. App.--Fort Worth 2006, pet.
ref'd). However, they are separate offenses with different elements. Compare Tex.
Penal Code § 19.02(b)(1) & (2) with Tex. Penal Code § 19.02(b)(3). Murder
requires the defendant to intentionally or knowingly cause the death of an individual, 
see Tex. Penal Code § 19.02(b)(1), or an intent to cause serious bodily injury with
the commission of an act clearly dangerous to human life that causes the death of an
individual. See Tex. Penal Code § 19.02(b)(2). In contrast, felony murder is an
unintentional murder committed in the course of committing a felony. Fuentes v.
State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (citing Tex. Penal Code §
19.02(b)(3)).

 At trial, appellant requested a lesser-included offense charge because "there has
been no evidence, physical evidence that would go along with the aspect of robbery." 
This argument referenced the lack of evidence of a robbery and, thus, was a request
for a charge on the lesser-included offense of murder under either sections
19.02(b)(1) or (b)(2), both of which require intent, but not an underlying felony. 
Because appellant argued that there was no robbery, this could not have been a
request for a felony murder charge under 19.02(b)(3). However, on appeal, appellant
alleges that a lesser-included offense should have been included in the charge because
there is evidence raising "the possibility that appellant may not have intentionally and
knowingly caused the victim's death" even though he intended to rob her. This
argument references the lack of evidence of an intentional or knowing act causing the
death of another and is a request on the lesser-included offense of felony murder
under section 19.02(b)(3), which does not require intent, but does require an
underlying felony. Because appellant's argument to the trial court does not comport
with his argument on appeal, the issue is waived. See Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990) (holding that to preserve error on appeal, there must
be timely trial objection specifically stating legal basis for objection, and objection
stating one legal basis may not be used to support another legal theory on appeal);
Pennington v. State, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985) (stating that
objection to charge must comport with contention on appeal or nothing is preserved
for appellate review).

 We also note that the trial court in this case was asked to submit a lesser-included charge on murder under either section 19.02(b)(1) or (2), but not felony
murder under section 19.02(3). The trial court had no duty to sua sponte submit a
lesser-included offense charge on any other type of murder offense that might have
been raised, but was not. See Tolbert v. State, 306 S.W.3d 776, 781 (Tex. Crim. App.
2010) (holding that trial court has no duty to submit lesser-included offense unless
requested to do so by defendant).

 Because appellant's objection to the trial court does not comport with his point
of error on appeal, and the trial court had no duty to sua sponte charge the jury on
anything other than the murder charge specifically requested by appellant, we
overrule appellant's fourth point of error.

CONCLUSION

 We affirm the judgment of the trial court. 





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Bland and Massengale.


Do not publish. Tex. R. App. P. 47.2(b).

 



 
1. The acting district attorney of Harris County at the time of appellant's trial was
Ken Magidson. 
2. At the hearing on the motion for new trial, appellant's trial counsel was asked,
"Did you find out after trial that she [Herlinda] would be allowed to plead
guilty to aggravated robbery for a sentence of 15 years?" He answered:

 

 Huh, yes. Well, I didn't know if it was going to be murder or
aggravated robbery. We went back, Mr. Hart and I went
back-and it was a very gentlemanly trial, very polite trial-and we
went back to the jury and of course one juror inquired
immediately what's going to happen to Ms. Gusman. And then
at that point Mr. Hart basically made a statement that Mr.
Magidson had approved 15 years, and you know, kind of shocked
me. So I mean, you know, that just absolutely floored me in
reference to that happening. 

3. Hart testified that he was concerned about Herlinda's testimony because (1)
she was related to appellant, (2) she had known appellant since childhood, (3)
her husband and appellant are cousins, and (4) there was reason to believe
Herlinda was under pressure to refuse to testify against appellant.